Judge Coalter.
The jury in this case find two facts ; 1. That the plaintiff Nanny was brought into this commonwealth, from the state of North Carolina, by *381 Thomas Jones subsequent to the 5th of October, 1778; 2. They also find, from inspection, that the said plaintiff Nanny Pagee is a white woman.
After finding these two facts, the jury go on to say, 5‘Weof the jury, therefore, find that the plaintiffs are free persons, and not slaves; and we find for them one penny damages.”
I say nothing of the other finding, to wit, “ that if the said"plaintiff was a slave, it doth not appear to the jury that the said Thomas Jones did comply with the provisions of the act for preventing the further importation of slavesbecause the jury need not find the negative of a fact which the defendant must show, in order to support his plea of justification. That part of the verdict, therefore, must clearly be rejected as surplusage. The case, then, will stand upon the other two facts, accompanied with the general finding that the plaintiffs are free*.
The facts aforesaid are entirely distinct in their nature, and not depending at all on the same testimony ; and either of them, if found upon proper and legal testimony, will entitle the party, ipso facto, to freedom, unless the defendant can show something to take his case out of their influence.
I am farther of opinion that, if the court erred in any instruction, or opinion given, which might have had an improper influence with the jury, cn the finding of either one of those facts, yet, if the other fact was properly and legally found, the judgment ought not to be reversed because of that error. For example, if the court erred as to the first finding, in not permitting the jury to presume that the oath required by law was taken, yet, if it is properly found that the plaintiff Nanny is a white woman, and, therefore, she and her children free, they cannot be turned round to contest their right to freedom on another and independent point, even if that other point might ultimately be found against them. Suppose the court had permitted the jury to presume, uay, suppose the *382 the law; yet, if the jury had found that the plaintiff was a white woman, and, therefore, she and her children free, they could not be continued in slavery because they had been claimed and held as slaves. So, é converso, if she is black, and that circumstance had been found against her, or if it had been improperly found that she is white ; yet, if the other point was well found in her favour, she would prevail.
But I incline to think that both these points were well •found in her favour.
The bills of exceptions admit that the plaintiff Nanny was imported into this state about the year 1780; and, consequently, if she was a slave, her case would be subject to the act of 1778 above referred to: and the defendant- alleges, in the bill of exceptions, that Jones came within the provisions of the 4th section of that act, to wit, that he had taken the oath, &c. . He does not pretend that his case was embraced by any of the other provisions in the law, but states the reverse. A great deal of testimony is brought into the record, under one of the bills of exceptions; and the testimony df the defendant goes to show that Jones purchased Nanny, as a slave, in North Carolina, and brought her into this state, where he resided for several years; so that the bill of exceptions, as well as the testimony, exclude the idea that he claimed immunity from the general provisions of the law, on any ground other than that of having taken the oath; and he moves the court to instruct the jury, that it is not necessary, under the circumstances of this case, that the defendants should prove by positive testimony that Jones took the oath required by law; but that the jury may, at this distance of time, presume, it to have been done.
What are the circumstances of the case, upon which this court are to form an opinion of the correctness of *383 the judgment below? Those circumstances were considered as entitled to important weight with the court below in forming their decision; and, unless the party chose to detail them in his exceptions, how are we to judge of the correctness of that decision ? The question is not an abstract one, how far, in any possible case, the jury might be left to presume that the oath was taken; (and if it was, it would have been improperly propounded, and the opinion extrajudicial;) but the question is whether, under the circumstances of this caseP the jury might presume it ?
It may be said that, though the circumstances of this ease are not detailed in this bill of exceptions, they are to be found in a preceding one. If we resort to that, what are they ? That this plaintiff Nanny was imported about the year 1780, or 1781; that the defendant purchased her at a sheriff’s sale, to satisfy his own debt, at which time it was rumoured that she was free, and others thereby were deterred from bidding, so as to put him on his guard; that this suit had been depending about five years from its institution, until the verdict aforesaid was found; and that, notwithstanding this warning, and this time to prepare ; notwithstanding, too, the prima facie evidence, from complexion, that this woman was free, fa circumstance well calculated to produce early inquiry and scrutiny,) there is not a particle of testimony going to prove (although several neighbours, of the party, at the time, are examined) that Jones ever went to a magistrate to take the oath; ever said he had done so ; or any circumstance whatever, save the lapse of time, whereon to ground a presumption that he had complied with the law.
I therefore incline, at present, to think that the direction of the court, going to negative this application, was, under the circumstances of this case, correct. But it is said the court went farther, and by that may have prevented the defendant from offering proof that he held by *384 devise, &c. If the court did go farther, it must have been in discussing an abstract question which did not arise in the case, was extrajudicial, could do no injury in the case, and was, therefore, not a ground for exception : or, if the party did lose any thing by that part of the opinion, he ought to have shown, by the bill of exceptions, its operation on the case. This, however, is • not pretended. The reverse appears to be the fact. .But I do not understand the opinion to go so far as to require positively a certificate of the magistrate. It requires positive testimony, it is true, to prove that Jones took the oath; and that the jury could not, in this case, presume, &c. This latter was the great question propounded. The party does not pretend to have either positive, or circumstantial testimony; and the court say that the jury, in this case, cannot presume; and, as I before said, I incline to think that, so far, it was. rightly decided.
But, if I am wrong as to this, and if the first point is found under circumstances that would require another trial, if that were the only point on which the plaintiffs could succeed, yet I am clear that there can be no objection to the other finding, to wit, u that the plaintiff Nanny is a white woman.”
The jury find this fact upon their own knowledge, in other words, by inspection. Was this improper?
The jury are to ascertain the fact one way or the other, anifrom evidence.
“ All certainty is a clear and distinct perception; and all clear and distinct perceptions depend upon a man’s own proper senses; and, as all demonstration is founded on the view of a man’s own proper senses, by a gradation of clear and distinct perceptions, so all probability is founded upon obscure and indistinct views, or upon report from the sight of others.”(a)
If the plaintiff Nanny had not been before the jury, they must have found their verdict upon the testimony of others, which would have amounted only to a proba.* *385 bility. But here, they have the highest evidence, th¿ evidence of their own senses; and upon that they find a verdict: in other words,';the jury find a verdict upon their own knowledge. They find a fact which makes it impossible for the defendant rightfully to hold this woman and her children as slaves; and they superadd to this finding, “that, therefore, they are free persons, and not slaves.” Touching the evidence, as to this fact, there is no objection, or exception. The defendant introduces witnesses to prove that she is not a white woman. Those witnesses give their opinions from the evidence of their senses: no person proves her birth, or parentage. The jury believe their own senses, in preference to the opinions of the witnesses ; and, if the court were in error on every other point, this fact, being fairly and legally found, must conclude the case.
I am, therefore, in favour of affirming the judgment.
Judge Cabell.
The issue in this case was, whether the appellees were free persons, or slaves} and that issue was found in their favour. It is no objection to this verdict that the jury have stated the grounds on which it is founded. The principle that verdicts should not find, argumentatively, the matter in controversy, means only that they ^hall not leave it to be inferred by argument, but shall find it expressly. Here, it is expressly found. The case in Hobart does not apply. There, the jury, after finding a fact specially, drew from it a conclusion not warranted by law, and then referred the whole to the consideration of the court, to determine whether the law was for the plaintiff or defendant; and the court, very properly, rejected their unwarrantable inference. This is a general verdict, leaving nothing for the decision of the court. Besides, it being ascertained that Nanny Pagee was a white woman, the law infers her (and of course her children) to be free, unless the contrary appears j and the jury having expressly found her *386 to be a white woman, and, therefore, free, the court (even if it had been a special verdict, referring the matter to them) would have intended every thing which can fairly be intended, in order to support the verdict. Much more will they do so, where the verdict is a general one.
I deem it unnecessary to enter minutely into the bill of exceptions, with a view to decide whether the opinions therein, pronounced by the judge, were correct, or incorrect. I have no doubt, however, of the propriety of the most of them; and if the others were erroneous, they related to points of which Hook could not have availed himself in repelling the presumption of freedom growing out of the fact of Nanny Pagee being a white woman. As to that important ground, on which the jury have placed her freedom, they were abstract questions, having no application to the cause. And, as a court is not bound to decide mere abstract questions, the expression of erroneous opinions on such questions (questions raised, perhaps, for the sole purpose of entangling the court) cannot be a sufficient ground for reversing the judgment. Believing, therefore, that there is nothing in the verdict itself which should induce us to set it aside, and not perceiving that it actually was, or might have been, influenced by any improper act, or opinion of the court, I am for affirming the judgment.
Judge Brooke.
In the case of Hudgins v. Wrights,(a) it is laid down that, where white persons are claimed as slaves, the onus probandi lies upon the claimant. It is said, also, that the distinguishing characteristics of the different species of the human racé are so visibly marked, that those species may be readily discriminated from each other by inspection; and that, in the case of a person visibly appearing to be of a slave race, it is incumbent on him to make out his freedom ; but, in the case of a person visibly appearing to be of a free race, it is *387 required of his adversary to 'show that he is a slave. This I understand to be the doctrine of this court as settled in that case.
Applying it to the one under consideration, I have no doubt the judgment of the district court was correct upon the verdict of the jury j putting out of the case every thing in the verdict, except the finding of the jury that, from inspection, the said plaintiff, Nanny Pagee, is a white woman; and this was quite sufficient; it being incumbent on the defendant to have proved, if he could, that the plaintiff was descended in the maternal line from a slave. Having not proved it, she and her children must be considered as free.
It is unnecessary to notice the objections arising out of the bill of exceptions, on this view of the subject. None of them, touch the ground of the opinion now delivered. The judgment of the district court must be affirmed.

 Gilb. Law of Ev. 2, 3.

 1 H & M. 133.